# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM, MUNICIPAL EMPLOYEES' RETIRMENT SYSTEM, AND FIREFIGHTERS' PENSION & RELIEF FUND | CIVIL ACTION |
| VERSUS | 15-482-SDD-EWD |
| ROYAL BANK OF SCOTLAND PLC | |

### RULING

Before the Court is Defendant, Royal Bank of Scotland's ("RBS"), *Motion to Dismiss the Petition*.[1] Plaintiffs, Firefighters' Retirement System, Municipal Employees' Retirement System, and Firefighters' Pension & Relief Fund, have filed an *Opposition*[2] to which the Royal Bank of Scotland has filed a *Reply*.[3] Plaintiffs have also filed a *Motion to Continue Submission Date to Allow Jurisdictional Discovery to Royal Bank of Scotland*,[4] which RBS has opposed.[5] For the following reasons, Royal Bank of Scotland's *Motion* shall be GRANTED, and Firefighters' Retirement System's, Municipal Employees' Retirement System's, and Firefighters' Pension & Relief Fund's *Motion* shall be DENIED.

I.  **FACTUAL AND PROCEDURAL HISTORY**

In this removal action, three pension funds, Firefighters Retirement System, Municipal Employees' Retirement System, and Firefighters' Pension & Relief Fund

---

[1] Rec. Doc. 14.
[2] Rec. Doc. 21.
[3] Rec. Doc. 31.
[4] Rec. Doc. 22.
[5] Rec. Doc. 37.

31420                              1



("Plaintiffs"), are seeking to recover damages from the Royal Bank of Scotland, a corporation organized under the laws of the United Kingdom, with its principal place of business in Edinburgh, Scotland, and with a U.S. branch located in Stamford, Connecticut.[6]

Plaintiffs' claims stem from their 2008 investment in Series N Shares issued by Fletcher Income Arbitrage Leveraged Fund ("Leveraged"), a hedge fund organized under the laws of the Cayman Islands.[7] According to the *Petition*,[8] "Corsair was the nominal sponsor of an investment vehicle organized by Citco and RBS to invest in Leveraged."[9] As part of a simultaneous funding, RBS loaned $91.3 million in financing[10] to a separate entity, Global Hawk, which, in turn, invested $106.3 million into Corsair (Jersey) Limited.[11] Corsair then allegedly purchased $34.7 million of Non-Series N Shares in Leveraged,[12] which shares were pledged as collateral for RBS's loan to Global Hawk.[13] The remaining funds were used to purchase Treasury Securities.[14]

Subsequently, Leveraged began experiencing adverse financial problems, resulting in a decrease in the value of the Non-Series N Shares. Plaintiffs contend that due to this financial predicament, Leveraged, RBS, and the holders of the Non-Series N Shares structured an Offering to solicit a $100 million investment from the Plaintiffs with

---

[6] Rec. Doc. 1-2, Rec. Doc. 14-8.
[7] Rec. Doc. 1-2, p. 4, ¶4. Plaintiffs alleged that Leveraged was the "feeder fund in a 'master/feeder' structure. The master fund in the structure is Fletcher Income Arbitrage Fund, Ltd., a company incorporated under the laws of the Cayman Islands."
[8] Rec. Doc. 1-2.
[9] Rec. Doc. 1-2, p. 4, ¶5.
[10] According to the Petition, RBS' $91.3 million funding was guaranteed by JP Morgan Securities, Ltd. and Credit Suisse Group AG. Rec. Doc. 1-2, pp. 3-4, ¶¶3h, 3i, and 3q.
[11] Rec. Doc. 1-2, pp. 4-5, ¶¶5, 7.
[12] Rec. Doc. 1-2, p.3, ¶3k defines "Non-Series N Shares" as "the Series 4, 5, and 6 shares of Leveraged owned by Corsair or Global Hawk which were purchased with the RBS Funding."
[13] Rec. Doc. 1-2, p. 5, ¶7.
[14] Rec. Doc. 1-2, p. 5, ¶7.

a new class of stock or Series N Shares. As part of this Offering, RBS entered into an agreement with Leveraged, and the holders of Non-Series N Shares, to subordinate their redemption rights in the Non-Series N Shares to the newly issued Series N Shares.[15] "Upon information and belief", Plaintiffs claim that RBS's consent was necessary "since the Non-Series N Shares were held as collateral for the RBS Funding."[16] A Priority Payment Agreement allegedly memorialized RBS's, Leveraged's, and the Non-Series N Shareholders' consent to subordinate their rights and was included in the Offering Memorandum.[17]

On March 12, 2008, representatives of Leveraged and Consulting Services Group ("CSG") met with the Plaintiffs in Baton Rouge, Louisiana, and solicited them to invest in Leveraged, offering them the Series N Shares.[18] Plaintiffs were provided with an Offering Memorandum that had been prepared by Leveraged's attorneys that delineated the investment's terms, including two Priority Payment provisions that required mandatory redemption of Series N Shares under certain circumstances.[19] During the meeting, Plaintiffs claim that representations were made to them that JP Morgan Ltd. and RBS had consented to the Offering's structure.[20] Based in part upon these representations and the Priority Payment Agreement, on April 1, 2008, Plaintiffs purchased $100 million of

---

[15] Rec. Doc. 1-2, p. 5, ¶10; p. 8, ¶¶19 and 21.
[16] Rec. Doc. 1-2, p. 8, ¶19.
[17] Rec. Doc. 1-2, p. 8, ¶21; p. 9, ¶26.
[18] Rec. Doc. 1-2, p. 5, ¶12.
[19] The two Priority Payment provisions required mandatory redemption of Series N Shares "(i) if Series 4, 5, or 6 investors redeemed, a mandatory redemption of Series N Shares was required one day before the redemption of the Series 4, 5, or 6 shareholder; and (ii) an automatic redemption of Series N would occur if the value of non-Series N capital accounts fell below 20% of the value of Series N shareholders' capital accounts." Rec. Doc. 1-2, p. 6, ¶14.
[20] Rec. Do. 1-2, p. 5, ¶12.

Series N Shares in Leveraged. Without the Priority Payment Agreement, Plaintiffs maintain that they would not have invested in Leveraged.[21]

Plaintiffs allege that, approximately one year later, RBS breached the terms of the Priority Payment Agreement by issuing a default notice and calling its loan to Global Hawk, and demanding the redemption of the Non-Series N Shares.[22] Plaintiffs claim they were never notified of the redemptions of the Non-Series N Shares after RBS issued its notice of default as required by the terms in the Offering Memorandum.[23] As a result of RBS's actions, Global Hawk allegedly received $24.7 million in "cash and/or property from Leveraged for the redemption of the Non-Series N shares" and repaid its debt to RBS.[24]

On June 19, 2015, Plaintiffs filed a *Petition* against RBS asserting state law claims for breach of contract, unjust enrichment, and detrimental reliance. Shortly thereafter, a *Petition for Intervention* was filed by the City of New Orleans and several officials of the City of New Orleans.[25] On July 21, 2015, RBS removed Plaintiffs' lawsuit to federal court on diversity jurisdiction grounds, 28 U.S.C. § 1332, and bankruptcy jurisdiction, 28 U.S.C. § 1452(a).[26] RBS moves to dismiss Plaintiffs' claims for lack of personal jurisdiction and for failure to state a claim.[27] The Plaintiffs contend that the RBS's arguments lack merit[28] but have moved for jurisdictional discovery if the Court finds that it lacks personal jurisdiction over RBS.

---

[21] Rec. Doc. 1-2, p. 8, ¶21; p. 9, ¶26.
[22] Rec. Doc. 1-2, p. 9, ¶27.
[23] Rec. Doc. 1-2, p. 10, ¶30.
[24] Rec. Doc. 1-2, p. 10, ¶33.
[25] Rec. Doc. 1-3.
[26] Rec. Doc. 1. *In re Fletcher International, Ltd.*, Case No. 12-12796 (Bankr. S.D.N.Y. 2012); *In re FIA Leveraged Fund*, Case No. 14-10093 (Bankr. S.D.N.Y. 2014); *In re Fletcher Income Arbitrage Fund, Inc.*, Case No. 14-10094 (Bankr. S.D.N.Y. 2014). See Recs. Doc. 1-4, 1-5, 1-6, 1-7.
[27] Rec. Doc. 14.
[28] Rec. Doc. 21.

31420                                    4

## II. LAW AND ANALYSIS

Of the two grounds for dismissal articulated by RBS, the first basis—lack of personal jurisdiction—suffices. Plaintiffs have failed to establish a *prima facie* case that RBS is subject to personal jurisdiction in Louisiana with respect to their claims.

### A. Legal Standard for Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the Court lacks personal jurisdiction.[29] "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[30] When, as in this case, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.[31] "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."[32] However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'"[33] The Court may consider "affidavits,

---

[29] Fed.R.Civ.P. 12(b)(2).
[30] *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)(citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[31] *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Proof by a preponderance of the evidence is not required." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (citing *Bullion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990)).
[32] *Id.* (quoting *Bullion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990)).
[33] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015).

interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[34]

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."[35] As for the first element, it is well-established that Louisiana's long arm statute is coextensive with the limits of constitutional due process.[36] Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees.[37]

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'"[38] Sufficient minimum contacts will give rise to either general, "all-purpose" jurisdiction or specific, "case-linked" jurisdiction.[39]

A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them."[40] The Supreme Court considered the requirements for establishing general jurisdiction in *Daimler AG v. Bauman*.[41] The Court instructs that the proper consideration when determining general jurisdiction is "'whether that corporation's

---

[34] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)(quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[35] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).
[36] *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010)(*citing Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).
[37] *Id.*
[38] *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)(citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).
[39] *Goodyear Dunlop Tires Operations, S.A. v Brown*, 131 S.Ct. 2846, 2851 (2011).
[40] *Id.*
[41] *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).

31420                                                                6

affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"[42] The *Daimler* Court rejected the notion that a nonresident defendant is subject to general jurisdiction "in every State in which the corporation engages in a substantial, continuous, and systematic course of business," finding such an approach "unacceptably grasping."[43] Rather, the Court held that for a corporation, "the place of incorporation and principal place of business" are where it is "at home" and thus paradigm bases for jurisdiction.[44] Importantly, the *Daimler* Court noted that it "[did] not foreclose the possibility that in an exceptional case ... a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature to render the corporation at home in that state."[45] In determining whether a corporation's affiliations with a state are sufficient to impose general jurisdiction, the inquiry does not turn solely on "the magnitude of the defendant's in-state contacts."[46] Rather, a court must appraise the "corporation's activities in their entirety, nationwide and worldwide."[47] In light of *Daimler*, the Fifth Circuit has observed that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[48]

Even when the defendant lacks "continuous and systematic contacts" to support general jurisdiction, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[49] Specific jurisdiction "focuses on

---

[42] *Id.* at 761(quoting *Goodyear*, 131 S.Ct. 2846, 2851 (2011))(alteration original).
[43] *Id.*
[44] *Id.*
[45] *Id.* at 762, n. 19.
[46] *Id.*, n. 20. The Court further noted that "[a] corporation that operates in many places can scarcely be deemed at home in all of them."
[47] *Id.*
[48] *Monkton Ins. Servs., Ltd., v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[49] *Luvn' care*, 438 F.2d at 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 414, (1984)).

the relationship among the defendant, the forum, and the litigation."[50] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."[51] Within the Fifth Circuit, a three-step analysis is applied for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[52]

If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[53]

### B. Analysis

RBS contends that Plaintiffs fail to establish either general or specific jurisdiction. The Court agrees.

#### 1. General Jurisdiction

In light of the Supreme Court's decision in *Daimler*, the question before the Court for purposes of general jurisdiction is not whether RBS's contacts with the forum are "continuous and systematic" but whether its "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[54] Here, RBS is neither incorporated nor does it have a principal place of business in Louisiana.[55] In fact,

---

[50] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).
[51] *Id.*
[52] *Monkton*, 768 F.3d at 431.
[53] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006)(citation omitted).
[54] *Daimler*, 134 S.Ct. at 754.
[55] Rec. Doc. 14-8. "RBS is a direct, wholly owned subsidiary of Royal Bank of Scotland Group plc. RBS is incorporated under the laws of Scotland. The principal office of RBS is located at RBS Gogarburn, P.O. Box 1000, Edinburgh, Scotland."

RBS does not maintain any branch, agency, or representative office in Louisiana.[56] Under *Daimler*, however, the fact that these affiliations with the forum state do not exist, is not necessarily the death knell to finding general jurisdiction exists in this case. As previously discussed, *Daimler* left open the possibility that, in the exceptional case, general jurisdiction might still be attainable without such contacts in the forum state. After reviewing the *Petition*, however, the contacts alleged in this case do not trigger such an exception.

Plaintiffs contend that a strong basis for exercising general jurisdiction exists based upon RBS's filings and registration with the Louisiana Secretary of State to do business from 2007 through 2014,[57] filing of Annual Reports in Louisiana, payment of taxes in Louisiana, and Certificate of Authority to conduct business in Louisiana.[58] Fifth Circuit precedent has consistently held that being qualified to do business in a state[59] and the appointment of a registered agent for service alone cannot support the exercise of general jurisdiction.[60] Such precedent is further strengthened post-*Daimler*.

---

[56] Rec. Doc. 14-8, p. 1, ¶2.
[57] As of December 24, 2014, RBS was "no longer transacting business in the State of Louisiana" as reflected in its *Application for Withdrawal of a Foreign Corporation Limited Liability Company from the State of Louisiana*. Rec. Doc. 21-2.
[58] Rec. Doc. 21-2.
[59] *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992)( "Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.").
[60] *See, Wenche Siemer*, 966 F.2d at 181 ("While ... being qualified to do business, may on its face appear to be significant, it 'is of no special weight' in evaluating general personal jurisdiction."). See also, *DNH, LLC v. In-N-Out Burgers*, 381 F.Supp.2d 559, 565 (E.D.La. 2005)("Qualifying to do business in a state and appointing an agent for service of process there do not amount a 'general business presence' of a corporation that could sustain an assertion of general jurisdiction.") Plaintiffs rely upon the 1991 decision, *Levron v. Marriott*, to support their position that general jurisdiction exists where a foreign corporation registers to conduct business and does conduct business in Louisiana. Considering the *Levron* decision preceded *Daimler*, the Court declines to rely upon this decision for the proper general jurisdiction analysis. Plaintiffs also rely upon the Louisiana Supreme Court decision, *Bridges v. Autozone Properties, Inc.*, 900 So.2d 784 (2005) and the Louisiana Court of Appeals for the First Circuit decision, *Sec't Dept. of Rev. v. GAP (Apparel), Inc.*, 886 So.2d 459 (La. App. 1st Cir. 2004), to support their general jurisdiction argument. However, both cases precede *Daimler*, and, moreover, they involve the issue of Louisiana's taxing jurisdiction—an issue that has no bearing on the instant matter.

Aside from RBS's filings with the Secretary of State and Certificate of Authority to conduct business in Louisiana, the undisputed filings reflect that, since its date of registration to do business in Louisiana, RBS has never owned property (fixed assets or tangible property), had an office, or any employees in Louisiana.[61] The Court further finds that the payment of taxes to the State of Louisiana does not support the exercise of general jurisdiction over RBS. As the Supreme Court has explained in the past, the mere purchase of goods from a state, even at regular intervals and in substantial amounts, was insufficient to warrant the assertion of general jurisdiction over a non-resident.[62] A finding that general jurisdiction lies solely because the annual payment of taxes constitutes "continuous and systematic" contacts with Louisiana would amount to an "unacceptable grasp" as discussed in *Daimler*.

Relying on the Eastern District of Louisiana decision *Hills v. Brinks, Inc.*,[63] Plaintiffs contend that, under Louisiana law, La. R.S. § 13:201, RBS has subjected itself to the Court's jurisdiction by obtaining an authorization to conduct business in Louisiana.[64] The Court, however, finds otherwise.[65] Initially, the Court observes that *Hills* was decided

---

[61] Rec. Doc. 21-2, p. 6.
[62] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. 1868 (1984).
[63] *Hills v. Brinks, Inc.*, No. 07-4207, 2008 WL 243944 (E.D.La. Jan. 25, 2008). Unlike the pending matter, *Hills* involved a motion to dismiss for improper venue.
[64] La. R.S. 12:306 provides: "A foreign corporation which before January 1, 1969 has received a certificate of authority which is still valid, or which shall on or after January 1, 1969 receive a certificate of authority, shall, under a certificate of revocation or of withdrawal shall have been issued as provided in this Chapter: … (3) Except as in this Chapter otherwise provided, be subject to the same duties, restrictions, penalties and liabilities imposed on or after January 1, 1969 upon a business or nonprofit corporation of like character organized under the laws of this state."
[65] The Court further observes that the *Hills* court found that it had "personal jurisdiction over defendants because they purposefully availed themselves of the privileges of conducting business in Louisiana," and further found "exercising personal jurisdiction in this case does not offend traditional notions of fair play and substantial justice." The *Hills* court did not expressly state which type of personal jurisdiction—general or specific--existed over the defendant. Arguably, the *Hills* court's finding suggests that it had specific jurisdiction, considering minimum contacts for purposes of specific jurisdiction "exist where a defendant has purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Hunt Capital Partners, L.L.C. v. Berk*, No. 14-2726, 2015 WL 4397137, *4

approximately six years pre-*Daimler*. There are also certain factual differences. Unlike the defendant in *Hills*, since receiving its authorization to conduct business in Louisiana, RBS has never maintained an office in Louisiana, and its principal place of business is not in Baton Rouge, much less Louisiana.[66] In its analysis, the *Hills* court took <u>all</u> of these factors into consideration before exercising personal jurisdiction over the defendants. The court's ruling did not rest solely on La. R.S. § 13:201. Accordingly, the Court finds that the *Hills* case carries little weight in the instant matter.

Thus, even accepting the Plaintiffs' uncontroverted allegations as true and resolving all factual conflicts in their favor, the Court finds that Plaintiffs' contacts, in their entirety, do not rise to the continuous and substantial level required to render RBS "at home" in Louisiana. Without the requisite showing on this point, Plaintiffs have failed to establish a *prima facie* case for general jurisdiction over RBS.

### 2. Specific Jurisdiction

Likewise, this Court does not have specific jurisdiction over RBS. Specific jurisdiction may be established where the defendant "has purposely directed his activities at residents of the forum," and the plaintiff's alleged injury "arises out of or relate[s]" to the defendant's contacts with the forum state.[67] As previously discussed, the Court's inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[68] "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum

---

(E.D.La. July 13, 2015)(citing *Choice Healthcare, Inc. v. Kaiser Foundation Health*, 615 F.3d 364, 368 (5th Cir. 2010).
[66] In fact, within the United States, RBS maintains one branch in Connecticut and representative offices in Illinois, New York, and New Jersey (license only). Rec. Doc. 14-8, p. 2, ¶3.
[67] *Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010)(quoting *Burger King v. Rudzewicz*, 105 S.Ct. 2174 (1985)).
[68] *Walden*, 134 S.Ct. at 1121.

31420                                    11

State."[69]  In other words, the Court must determine whether the non-resident defendant directed specific acts toward the forum state.  The minimum contacts inquiry cannot be satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State."[70]  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[71]

Plaintiffs identify several allegations in their *Petition* in an attempt to demonstrate that a *prima facie* case for the exercise of specific personal jurisdiction.[72]  The Court accepts uncontroverted facts as true.  However, the Court assigns no weight to conclusory allegations, even if uncontroverted.[73]  Plaintiffs overlook this well-settled legal principal.  The specific facts identified by Plaintiffs in their opposition memorandum are largely conclusory and to some degree speculative.[74]  Hence, the Court shall not credit such allegations in assessing whether Plaintiffs have made their *prima facie* case.

Here, the Court finds that the allegations fail to establish that RBS "*itself*" directed any contacts towards Louisiana regarding the investment transactions giving rise to Plaintiffs' claims.  A review of the *Petition* reveals that all of the activities that were specifically directed towards Louisiana involved other entities, such as Leveraged—not

---

[69] *Walden*, 134 S.Ct. at 1122(emphasis original).
[70] *Id.*
[71] *Id.* at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475, 105 S.Ct. 2174 (1985)(internal quotation marks omitted).
[72] Rec. Doc. 21, pp. 13-14.
[73] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).
[74] For instance, Plaintiffs' speculation that RBS must have agreed to a subordination of Leveraged shares is contradicted by the Offering Memorandum itself.  The Offering Memorandum indicates that Leveraged had the autonomy to "issue additional classes of shares which may differ in terms of, among other things, denomination of currency, the fees charged, minimum subscription amounts, redemption rights and other rights." Rec. Doc. 14-7, p.22.

RBS. For instance, Plaintiffs have alleged meeting with Leveraged and CSG in Baton Rouge, Louisiana, regarding the purchase of Series N Shares.[75] The *Petition* is completely devoid of any allegations that RBS ever communicated with the Plaintiffs or went to Louisiana to discuss the investment opportunity. The Priority Payment Agreement is not, in this Court's view, a communication or contact with the Plaintiffs which gives rise to specific personal jurisdiction.

Plaintiffs' contractual claims are further based on the terms included in the Offering Memorandum prepared by Leveraged's attorneys—not RBS's legal counsel. As for the alleged Priority Payment Agreement, it is well established that "[c]ontracting with a resident of the forum state does not alone support the exercise of jurisdiction over [a] defendant."[76] In cases which involve disputes arising out of contract, such as this one, the inquiry is more nuanced such that "the place of contract negotiation and execution, the place of contract performance, and the state whose laws the parties have chosen to govern the contract are all significant in evaluating whether specific jurisdiction exists."[77] In this instance, Plaintiffs allege they are third party beneficiaries to a Priority Payment Agreement, but the *Petition* is devoid of any allegations that the agreement was executed in Louisiana, governed by Louisiana law, or related in any other manner to the state. Moreover, the agreement was purportedly entered into by RBS and other entities that are not Louisiana residents. As alleged, the Plaintiffs are the only links between the Priority Payment Agreement and Louisiana.

---

[75] Rec. Doc. 1-2, p. 4, ¶4; p. 5, ¶11. In the Petition, the Plaintiffs actually define the "Offering Memorandum" as the "Leveraged Confidential Memorandum dated April 1, 2008, used by Leveraged to market the Series N Shares." Rec. Doc. 1-2, p. 3. "m".
[76] *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003).
[77] *Salacia Logistics v. Four Winds Logistics, LLC*, No. 15-01512, 2015 WL 4645695, *4 (E.D.La. Aug. 4, 2015)(citing *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).

When the Court turns its attention to the claims related to RBS's issuance of the default notice, a similar problem arises. The underlying loan made by RBS to Global Hawk has not been alleged to have any connection to Louisiana. Likewise, the redemption of the Non-Series N Shares by non-Louisiana entities has no connection to Louisiana. Although Plaintiffs' experienced financial harm in Louisiana, injury in the forum state is not a sufficient means of connecting RBS to the forum.[78] The Court's focus must be on the RBS's conduct and whether that conduct connects RBS to Louisiana in a meaningful way.

Plaintiffs urge the Court to find specific personal jurisdiction because the Offering Memorandum—which included the Priority Agreement—was directed to the forum state by RBS, and the breach of the Priority Agreement's terms caused them damages. In the Fifth Circuit, a single communication directed at the forum can establish personal jurisdiction when the content of that communication gives rise to an international tort for which jurisdiction is sought.[79] For instance, in *Wein Air Alaska v. Brandt*, the Fifth Circuit held that various phone calls, letters, and faxes made by the non-resident defendant to the plaintiff were sufficient to establish specific jurisdiction because the single act contained and gave rise to the intentional tort cause of action of fraudulent misrepresentation.[80] Plaintiffs' reliance on *Wein* and other similar cases[81] is unavailing.

---

[78] *Pitts v. Ford Motor Co.*, No. 14-396, 2015 WL 5256838, *6 (S.D.Miss. Aug. 26, 2015)(quoting *Walden*, 134 S.Ct. at 1125)("...mere injury to a forum resident is not a sufficient connection to the forum...an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").
[79] *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)("When the actual content of communications with a forum gives rise to intentional tort causes of action, the alone constitutes purposeful availment.").
[80] *Id.* at 208.
[81] *Rossi v. Wohl*, 246 Fed.Appx. 856 (5th Cir. 2007)(defendant law firm's communications with plaintiff regarding the payment of expert fees sufficient for specific personal jurisdiction where plaintiff sued in tort

Unlike *Wien Air Alaska*, Plaintiffs' *Petition* is devoid of any allegations suggesting that RBS sent, delivered, communicated, or negotiated directly with the Plaintiffs regarding subordination, the Offering Memorandum, or the Priority Payment Agreement. In fact, there are no allegations suggesting that RBS directed any communication, much less activity, regarding the financial investment toward the forum state. Moreover, Plaintiffs' claims of breach of contract, unjust enrichment, and detrimental reliance, sound in contract not tort. In *Wein*, the Fifth Circuit "made clear that a finding on the basis of a communication, that a nonresident defendant *purposely* availed [itself] of the benefits and protections of the forum state, turns upon whether the communication gives rise to an intentional tort cause of action."[82] To the extent Plaintiffs are attempting to argue that RBS's "breach" of the terms of the Priority Payment Agreement serves as a "substantial act directed toward the forum," the Court finds such an argument to be meritless as it ultimately turns on the effect of injuries sustained by the Plaintiffs; as previously discussed, this factor alone does not establish the minimum contacts necessary to hale RBS into a Louisiana court.[83] Hence, the Court finds no merit in Plaintiffs' foregoing arguments.[84]

In this case, the Court finds that the minimum contacts necessary to exercise specific personal jurisdiction over RBS simply do not exist. Rather than identifying those

---

for false misrepresentation); *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001)(allegations that defendant made misrepresentations in phone call with plaintiff, and sent financial documents to plaintiff including same misrepresentations were enough to confer personal jurisdiction).
[82] *Loiacano v. Disa Global Solutions, Inc.*, No. 14-17502014 WL 5317872, at *3 (E.D.La. Oct. 16, 2014).
[83] While it is certainly true that "a single, substantial act directed toward the forum can support jurisdiction" Plaintiffs have failed to plead any such activity. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990)(citing *Burger King*, 471 U.S. 462).
[84] The Court also finds Plaintiffs' reliance on *Escoto v. U.S. Lending Corp.*, 95-2692 (La. App. 4 Cir. 9/23/98); 675 So.2d 741 is misplaced in the instant matter. The issues in *Escoto* involved whether to exercise personal jurisdiction over an individual in his corporate capacity and the applicability of the fiduciary shield doctrine. Neither of these issues are relevant to the case before the Court.

contacts that RBS has made with the forum state itself, Plaintiffs have attempted to make their *prima facie* case by focusing on RBS's interactions with Leveraged, which, based on the allegations plead in this case, directed its actions and communications towards Louisiana. The Supreme Court in *Walden* specifically warned against relying upon such interactions to establish specific personal jurisdiction. "Due Process requires that a defendant be haled into a court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[85] Considering the Supreme Court's directive in *Walden*, the Court finds that RBS's contacts with Louisiana are far too attenuated for RBS to have "reasonably anticipated being haled into court" here. The Court finds that the Plaintiffs fail to make a *prima facie* showing of specific personal jurisdiction.

### III. JURISDICTIONAL DISCOVERY

Plaintiffs move for additional jurisdictional discovery in this case.[86] RBS opposes the motion.[87] The district court has broad discretion on whether to permit a party to conduct jurisdictional discovery.[88] When seeking discovery on personal jurisdiction, a plaintiff must first make a "preliminary showing of jurisdiction" before being entitled to such discovery.[89] "[D]iscovery on matters of personal jurisdiction need not be permitted … unless the motion to dismiss raises issues of fact."[90] "In other words, the plaintiff must state what facts he believes discovery would uncover and how those facts would support

---

[85] *Walden*, 134 S.Ct. at 1123.
[86] Rec. Doc. 22.
[87] Rec. Doc. 37.
[88] *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).
[89] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2009).
[90] *Wyatt*, 686 F.2d at 284.

personal jurisdiction."[91]  "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."[92]  The Fifth Circuit has affirmed denials of discovery on questions of personal jurisdiction where the discovery sought "could not have added any significant facts."[93]

The Court finds that additional discovery is not warranted in this case.  Contrary to Plaintiffs' position, the Court does not find that RBS's motion to dismiss raised any issues of fact; nor have Plaintiffs identified disputed facts.  Moreover, Plaintiffs have failed to identify what they believe discovery would reveal, or how these newly discovered facts would establish personal jurisdiction over RBS.  Plaintiffs have, therefore, failed to adequately support their request for jurisdictional discovery.[94]  Instead, the discovery sought by Plaintiffs goes directly to the merits of the case.  Therefore, the Court finds that, additional discovery will not add any significant facts and "[t]he court need not allow [Plaintiffs] to conduct a jurisdictional fishing expedition seeking facts to support a claim of general jurisdiction."[95]  The Court further finds that, because the absence of personal jurisdiction is clear, discovery would serve no meaningful purpose. Accordingly, Plaintiffs' *Motion* shall be denied.

---

[91] *21st Century Financial Services, Inc. v. Mandelbaum*, No. A-10-CA-803LY, 2011 WL 3844209, at *2 (W.D.Tex. Aug. 30, 2011)(citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.), *cert denied*, 531 U.S. 979 (2000)).
[92] *Wyatt*, 686 F.2d at 284.
[93] *Id.*
[94] *National Sur. Corp. v. Ferguson Enterprises, Inc.*, No. 3:13-CV-2045-M, 2014 WL 5472436, *3 (N.D. Tex. Oct. 29, 2014)
[95] *Id.* (quoting *Bell Helicopter Textron, Inc. v. American Eurocopter, L.L.C.*, 729 F.Supp.2d 789, 797-98 (N.D.Tex. 2010)).

## IV. CONCLUSION

Wherefore, the *Motion to Dismiss*[96] filed by Defendant, Royal Bank of Scotland, on Rule 12(b)(2) grounds for lack of personal jurisdiction over Plaintiffs, Firefighters' Retirement System, Municipal Employees' Retirement System, and New Orleans Firefighters Pension & Relief Fund, is hereby GRANTED. The Defendant's Motion[97] seeking dismissal on Rule 12(b)(6) grounds is hereby DENIED AS MOOT.

Furthermore, the *Motion to Continue Submission Date to Allow Jurisdictional Discovery to the Royal Bank of Scotland*[98] filed by Plaintiffs is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 29, 2016</u>.

*[signature]*

JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[96] Rec. Doc. 14.
[97] Rec. Doc. 14.
[98] Rec. Doc. 22.